Joseph Jurkiewicz and Estate of Agnes Jurkiewicz, Deceased, Joseph Jurkiewicz, Administrator v. Commissioner.
Jurkiewicz v. Commissioner
Docket No. 53090.
United States Tax Court
T.C. Memo 1955-318; 1955 Tax Ct. Memo LEXIS 21; 14 T.C.M. (CCH) 1243; T.C.M. (RIA) 55318; November 30, 1955
*21 Anthony L. Lutomski, Esq., Guardian Building, Detroit, Mich., for the petitioners. Robert B. P-IERCE, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioners and additions to tax under section 293(b) of the Internal Revenue Code of 1939 as follows: Addition
Year
Deficiency
to tax
1948
$1,036.60
$518.30
1949
832.04
416.02
1950
444.58
222.29
The issues presented for determination are whether the respondent erred in determining (1) that Joseph and Agnes Jurkiewicz understated the taxable net income from their business for 1948, 1949 and 1950 and (2) that the petitioners are liable for additions to tax under section 293(b) of the Internal Revenue Code of 1939 for fraud for 1948, 1949 and 1950. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners are Joseph Jurkiewicz, an individual, with residence at 8034 Knodell Street, Detroit, Michigan, and the estate of Agnes Jurkiewicz, deceased, Joseph Jurkiewicz, administrator. Agnes Jurkiewicz died December 12, 1953. During the *22 years 1948 through 1950, and for several years prior and subsequent thereto, Joseph and Agnes Jurkiewicz were husband and wife and were engaged in the operation of a bar known as Jo York's Bar in Detroit, Michigan. They filed joint Federal income tax returns for the years 1948 through 1950, prepared by their attorney, Anthony L. Lutomski, with the collector at Detroit. The only income shown by Joseph and Agnes Jurkiewicz in their returns for 1948, 1949 and 1950 was from the bar business. In their returns for those years they reported the following with respect to that business: Total cost
of goods sold
Total
and other busi-
Net
Year
receipts
ness deductions
profit
1948
$39,787.55
$33,779.41
$6,008.14
1949
38,444.30
34,943.41
3,500.89
1950
33,212.20
28,214.67
4,997.53
No books or records of the petitioners for 1948 and no original records of bar receipts for 1949 and 1950 were furnished to or discovered by the revenue agent who investigated the tax liability of the petitioners for the years 1948 through 1950. As a consequence, the respondent, in determining the deficiencies, had to resort to other methods of determining the income *23 of the petitioners for 1948 and their gross receipts from the bar for 1949 and 1950. He determined the gross receipts from the bar for 1949 and 1950 by determining the quantities of beer, whisky and other merchandise actually sold in each year and using the selling prices at which the various items of merchandise were sold. In so determining the gross receipts the respondent determined that 10 ounces of draught beer had been sold per glass and that 28 "shots" had been obtained from each fifth of whisky during those years. From the gross receipts determined in the foregoing manner for the respective years the respondent deducted 5 per cent thereof for spillage, waste and gratuities. As a result of his computations the respondent determined that there were unreported gross receipts from the bar of $5,472.26 for 1949 and $6,785.43 for 1950. The parties have stipulated all of the factors entering into a computation of gross receipts by the above method except the amount of draught beer sold per glass and the number of "shots" served from a fifth of whisky. During the years 1948, 1949 and 1950 the petitioners served their bar customers 10 ounces of draught beer per glass and served *24 25 "shots" from a fifth of whisky. The parties have stipulated that the petitioners' selling prices of beer, whisky and other merchandise during 1948 were the same as their selling prices of such items during 1949. In determining the deficiency for 1948 the respondent applied to the cost of goods sold as shown on the return for 1948 a markup of 215.28 per cent, which was the mark-up shown by his computation for 1949, and after deducting 5 per cent for spillage, waste and gratuities determined unreported gross receipts of the bar of $5,149.46 for 1948. In determining the deficiencies, deductions of $250, $180 and $360 taken in the returns for 1948, 1949 and 1950, respectively, for "Car maintenance" were disallowed on the ground that the use of a car was not necessary in the conduct of the bar business. The respondent, in determining the deficiencies, allowed deductions for interest in the amounts of $435.51, $435.76 and $392.91, for 1948, 1949 and 1950, respectively, although the only deduction taken on the returns for this item was $350 claimed for 1948. In determining the deficiency for 1950, the respondent allowed a deduction of $1,697.29 for taxes, although only $772.62 *25 was deducted on the return, and allowed a deduction of $7,696 for wages, although only $4,506 was deducted on the return. The following is a statement of the corrected net income of the bar business as determined by the respondent, the net income reported therefrom by the petitioners, and the understatement of net income as determined by the respondent for the indicated years: Understate-
Corrected
Net income
ment of net
Year
net income
reported
income
1948
$11,661.02
$6,008.14
$5,652.88
1949
8,717.39
3,500.89
5,216.50
1950
7,635.38
4,997.53
2,637.85
The petitioners did not record any real estate taxes on their books for the taxable years in question nor take any deductions therefor in their income tax returns, and no deductions for real estate taxes have been allowed in the determination of the deficiencies. Real estate taxes in the amounts of $261.79, $330.47 and $361.13 were incurred and paid in connection with the bar business during 1948, 1949 and 1950, respectively. Incident to the conduct of the bar business the petitioners also incurred and paid personal property taxes of $106.93, $230.20 and $165.12 during 1948, 1949 and *26 1950, respectively, which were not recorded on their books, nor deducted in their income tax returns for the respective years, nor allowed as deductions by the respondent in determining the deficiencies for the respective years. The foregoing amounts of real estate and personal taxes were allowable business deductions for the respective years. During November 1947 Joseph Jurkiewicz borrowed $8,000 from Sophia Kubert which he used to acquire fixtures for the bar. The loan was evidenced by a note given by Jurkiewicz and was secured by a mortgage on the bar premises. Interest in the amounts of $351.30, $282.50 and $222.50 was paid to Sophia Kubert on the loan during 1948, 1949 and 1950, respectively. No part of any of these amounts was recorded on the books of the petitioners nor deducted in any of the returns for 1948, 1949 and 1950, nor allowed by the respondent in determining the deficiencies for the respective years. The foregoing amounts were allowable business deductions for the respective years. Opinion The petitioners contend that the respondent erred in not accepting as correct the amounts of gross receipts of the bar as shown in a ledger book maintained by them and reported *27 in their income tax returns for 1949 and 1950 and further erred in determining the gross receipts of the bar for those years by using the method employed by him. The respondent's action in the respects thus complained of by the petitioners is presumed to be correct and the burden was on the petitioners to show that it was erroneous. Respecting the recording of the receipts of the bar, petitioner Joseph Jurkiewicz testified that in January 1948 he acquired a new cash register which had an adding machine tape on which all sales were recorded and totaled as they were made; that each day he checked the cash register, entered in a book the total amount of sales as shown by the tape for the day and then turned the register back to zero; that he repeated the operation every day for an entire month; that at the end of the month he called his bookkeeper who "would come over and take all receipts and make out my sales tax"; that he kept his own books for 1948; and that Anthony Lutomski, attorney herein for the petitioners, was his bookkeeper in 1949 and 1950. The only book or records purporting to contain anything relating to receipts of the bar business made available to, or discovered by, *28 respondent was a book referred to as the bar ledger, which was placed in evidence by petitioners. This book contains two captions relating to receipts, one designated "Misc.," under which entries were made of amounts for approximately weekly periods, and the other designated "Bar," under which an entry of a single amount was made for the month. The combined totals shown under the two captions for 1949 and 1950, respectively, were reported as the gross receipts in the petitioners' income tax returns for the respective years. The bookkeeper of the petitioners was not offered as a witness nor are we informed from any other source as to the sources and procedures used in arriving at the amounts entered as receipts in the bar ledger. Neither were the cash register tapes, nor the book in which Jurkiewicz stated that he entered the daily totals shown by the tapes offered in evidence. In such a state of the record we are without a basis upon which to find that the amounts shown in the bar ledger correctly reflected the gross receipts for the years 1949 and 1950 and therefore are unable to hold that the respondent erred in not accepting them as correct. The respondent's computation of the *29 gross receipts of the bar for 1949 and 1950 on the basis of beer, whisky and other merchandise actually sold and at the prices at which sold is sustained by the stipulation of the parties and other evidence of record except that in the computation of the gross receipts from whisky the respondent determined that the petitioners served 28 "shots" from a fifth of whisky, whereas the evidence shows that 25 "shots" were served. In a recomputation of the tax for 1949 and 1950 the latter number of "shots" will be used in computing the gross receipts from whisky. A computation of gross receipts made on the basis of merchandise actually sold and at the prices at which sold should correctly reflect gross receipts. The respondent's computation of gross receipts, subject to the adjustment indicated above, was made on such basis. In view of the foregoing and in the absence of evidence showing that some other method should have been employed, we are unable to find that the respondent's use of the method employed by him in computing gross receipts for 1949 and 1950 was incorrect. We have set out in our findings the method employed by the respondent in determining gross receipts for 1948. Aside *30 from questions relating to the amount of draught beer per glass served to customers and the number of "shots" served from a fifth of whisky, all of which have been disposed of by our findings of fact, the petitioners submitted no evidence and make no argument directed to the respondent's determination of gross receipts for the year. Subject to an adjustment of the percentage mark-up used by the respondent for 1948, required as a result of our finding as to the number of "shots" served from a fifth of whisky, the respondent's computation of gross receipts for 1948 is sustained. The petitioners contend that there should be allowed as deductions for business expenses incurred in connection with the ownership and operation of the bar the amounts of $372.38, $322.53 and $252.54 as interest paid in 1948, 1949 and 1950, respectively, on a loan of $8,000 made by Sophia E. Kubert to petitioner Joseph Jurkiewicz in November 1947. We have carefully considered all the evidence relating to the loan and the various arguments made by the parties with respect thereto and have found as a fact that such loan was made, that it was evidenced by a note given by Jurkiewicz and was secured by a mortgage *31 on the bar premises. We have further found that the deductions allowable on account of interest paid on the loan were $351.30, $282.50 and $222.50 for 1948, 1949 and 1950, respectively, instead of the amounts contended for by the petitioners for the respective years. The remaining issue is whether the petitioners are liable for additions to tax for fraud for the years 1948 through 1950. The respondent had the burden of proof as to this issue. In contending that he has discharged his burden, the respondent points to the understatements of income for 1949 and 1950 resulting from a determination of gross receipts for those years on the basis of merchandise actually sold and at the prices sold and to the petitioners' lack of records for 1948 and the understatement of income for that year resulting from the application of a percentage mark-up to the cost of goods sold as shown in the petitioners' return for that year. He further points to the fact that certain allowable business deductions were omitted in whole or in part from the returns and contends that this was done to make the net income reported appear more in keeping with the gross receipts reported and thereby reduce the likelihood *32 of an investigation of their tax liability which would reveal the large understatements of gross receipts. He also points to discrepancies and conflicts contained in statements made by Joseph Jurkiewicz at various times with respect to matters relating to the bar business and the income therefrom for the years involved and urges that Jurkiewicz's testimony when unsupported is not worthy of credence. As has been said many times, fraud must be established by clear and convincing evidence. It is clear that the returns for each of the years in question failed to correctly reflect the taxable income of the petitioners, and it is equally clear that at times Joseph Jurkiewicz has made some contradictory statements about his tax affairs. However, the record shows that Lutomski, the petitioners' attorney herein, prepared the returns for all the years in controversy and in addition was the petitioners' bookkeeper for 1949 and 1950 and that the petitioners looked to him to properly prepare their returns for all the years in question and also to properly handle their accounting records for 1949 and 1950. Whether Lutomski was unable, or whether he merely neglected, to do what the petitioners *33 expected of him is not clear from the record. That he failed to do so is clear from the record. Such being the situation we can not find that the various errors in the returns were the result of an intent on the part of the petitioners to defraud or evade tax rather than the result of the failures or mistakes of Lutomski. Since the evidence fails to show that the deficiencies in tax were due to an intent on the part of the petitioners to defraud or evade tax, the petitioners are sustained on this issue. Decision will be entered under Rule 50.